UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RANDY P. BRITTON and CAROLYN P. BRITTON, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:23-cv-12358-IT |
| | * | |
| PHH MORTGAGE CORPORATION, PHH MORTGAGE SERVICES CORPORATION, NEWREZ LLC, NEW RESIDENTIAL MORTGAGE LLC, and KORDE AND ASSOCIATES, P.C., | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 12, 2024

TALWANI, D.J.

Plaintiffs Randy and Carolyn Britton, proceeding pro se, are condominium owners who, in 2004, began withholding monthly common area expenses owed to their condominium association, Drummer Boy Homes Association, Inc. ("Drummer Boy"). Much litigation has ensued—Drummer Boy has brought multiple suits in Massachusetts state court against the Brittons to enforce a priority lien over the unpaid common area fees, and the Brittons have in turn sued Drummer Boy and the law firm representing Drummer Boy in this court. Now, the Brittons are suing their loan servicers and their loan servicers' counsel. Pending before the court are five motions: Plaintiffs' First Motion to Remand to State Court Limited to Fatal Removal ("Motion to Remand") [Doc. No. 17]; Plaintiffs' Motion to Strike Defendants' Untimely and Unauthorized Supplement to Their Notice of Removal ("Motion to Strike") [Doc. No. 33]; and Defendants' Motions to Dismiss [Doc. Nos. 12, 14, 20]. In addition, Plaintiffs have raised

questions as to this court's jurisdiction. See Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' First Motion to Remand [Doc. No. 39]. For the reasons that follow, the court finds that it has subject matter jurisdiction, denies Plaintiffs' Motion to Remand [Doc. No. 17] and Motion to Strike [Doc. No. 33], and grants Defendants' Motions to Dismiss [Doc. Nos. 12, 14, 20].

I.   **Background**

A.   The Subject Mortgage and Prior Litigation

Since 2001, Carolyn Britton has owned a condominium unit at 10 Drummer Boy Way in Lexington, Massachusetts. Complaint ¶ 3 [Doc. No. 1-1]. In 2003, Carolyn Britton refinanced the unit and borrowed $275,000 secured by a mortgage from Coldwell Banker Mortgage (the "Mortgage"). Id. at ¶ 4. In 2008, she deeded the property to herself and her spouse, Randy Britton, as tenants by the entirety. Id. ¶ 3; see Drummer Boy Homes Ass'n, Inc. v. Britton, 474 Mass. 17, 19 (Mass. 2016).

Shortly after making the loan, Coldwell Banker sold the mortgage to Fannie Mae but retained the servicing rights. Complaint ¶ 5 [Doc. No. 1-1]. In 2015, Defendant PHH Corporation acquired Coldwell Banker Mortgage and formed Defendant PHH Mortgage Services Corporation (together, "PHH"). Id. ¶ 5. At some point, Defendants Newrez LLC or New Residential Mortgage, LLC (together, "Newrez") became a servicer or sub-servicer of the Brittons' mortgage. Id. ¶ 7.

B.   The Prior Litigation

In 2004, in response to a dispute with Drummer Boy regarding parking rules and fines, the Brittons began withholding their monthly common area fee. See Drummer Boy Homes Ass'n, Inc., 474 Mass. at 19. Drummer Boy brought an action in Concord District Court to recover those fees and enforce a priority lien for unpaid expenses and attorney's fees pursuant to

M.G.L. c. 183A, § 6(c) and c. 254, §§ 5, 5A. Id. The Brittons continued to withhold their common area fee, so Drummer Boy brought two subsequent suits against them to recover fees that accrued after the first suit was filed. Id.

The dispute made its way to the Supreme Judicial Court of Massachusetts ("SJC"). Drummer Boy Homes Ass'n, 474 Mass. at 18. The SJC concluded that M.G.L. c. 183A, § 6, permits a condominium organization to establish multiple contemporaneous priority liens on a condominium unit and that Drummer Boy was entitled to file successive legal actions against a unit owner to establish and enforce multiple contemporaneous liens, each with a six-month priority over the first mortgage, for the recoupment of successive periods of unpaid common expenses. Id. at 30. It also held that the condominium association was statutorily entitled to recover reasonable attorneys' fees and costs. Id. at 29-30. The SJC noted further that M.G.L. c. 183, § 6, allows a priority lienholder, such as a first mortgagee, to maintain its priority status by "assum[ing] responsibility for a unit owner's unpaid common expenses." Id. at 27. As the SJC explained,

> By enabling a first mortgagee to assume responsibility for a unit owner's unpaid common expenses, the Legislature has balanced the interests of a condominium association with those of a first mortgagee. On the one hand, the condominium association is assured that it will receive six months' worth of delinquent common expenses plus all future common expenses, thereby allowing it to meet its ongoing financial obligations without imposing an additional burden on unit owners who have paid their common expenses in a timely manner. On the other hand, the first mortgagee is assured that it will maintain its lien priority, and that the condominium association will refrain from taking further enforcement action. The first mortgagee also can avoid the costs and reasonable attorney's fees that otherwise would be incurred in the lien enforcement action, and can preserve the value of its collateral through the continuous payment of common expenses.

474 Mass. at 27-28.

Following the SJC's ruling, the trial court issued a judgment, and Drummer Boy started efforts to enforce the judgment, including scheduling the Brittons' unit for foreclosure. Complaint ¶ 13 [Doc. No. 1-1].

In June 2018, the Brittons filed a complaint in this court against Drummer Boy's legal counsel Marcus, Errico, Emmer & Brooks, P.C. ("MEEB"), Korde & Associates, P.C. ("Korde"), and Julie Ranieri, an attorney at that firm. See Britton et al. v. Marcus, Errico, Emmer & Brooks, P.C. et al., dkt.1:18-cv-11288 [Doc. No. 1]. In that suit, the Brittons alleged that MEEB and Korde conspired and acted unlawfully in their attempts to collect the Brittons' past due assessments prior to, during, and following the state court proceedings by Drummer Boy against the Brittons. See Memorandum and Order 4 [dkt. 1:18-cv-11288, Doc. No. 70]. On October 1, 2018, the Brittons voluntarily dismissed both Korde and Ranieri. See Notice of Voluntary Dismissal [dkt. 1:18-cv-11288, Doc. No. 10].

In resolving MEEB's motion to dismiss, this court found "at least three problems" with the Brittons' argument that MEEB and Drummer Boy improperly collected on the Brittons' past due assessments and improperly threatened to subjugate Fannie Mae's lien:

> First, no court has extended the Ninth Circuit's rationale to the Massachusetts statute that allows condominium associations to obtain liens senior to the mortgage holder where the mortgage holder does not itself assume responsibility for the past due fees. But [second,] even assuming that the Ninth Circuit's reasoning did apply with equal force here, it is not apparent why the Massachusetts statute would necessarily be preempted in its current form. As applied here, the Massachusetts statute gives the mortgage servicer the *choice* of whether to assume responsibility for the unpaid condominium fees. There are good reasons that a servicer may choose to do this that do not involve wrongful threats. For one, once the Federal Housing Finance Agency's conservatorship ends, the Federal Foreclosure Bar—to the extent it applies in Massachusetts—would no longer protect the mortgage holder from the condominium's priority status in foreclosure. Thus, by assuming responsibility for the past-due payments now, the servicer avoids the Brittons' unit accruing additional costs and fees between now and when the conservatorship ends—costs the servicer will ultimately have to cover if it wishes to maintain its priority status. Third and finally, the Brittons' argument fails because the crux of

their argument here is not that the relevant portion of Massachusetts law is preempted by the Federal Foreclosure Bar— a question not ultimately at issue here and one that the Brittons may not even have standing to bring—but that Defendants committed mail fraud by *complying with* the requirements of the Massachusetts law. Where there is no persuasive basis for Defendants to conclude that the Massachusetts law has been invalidated nor any plausible allegation that Defendants were following the letter of the law in bad faith, Defendants' compliance with the strict terms of the statute does not provide a plausible basis for relief.

Mem. and Order 9-10 [dkt. 1:18-cv-11288, Doc. No. 70] (internal citations omitted).

The court also considered and rejected the Brittons' contention that their post-remand appeal of the state court's judgment had the effect of automatically staying the execution of the judgment, such that Drummer Boy's attempts to collect the outstanding fees were illegal. Id. at 7. This court rejected that argument, noting that the state court had denied the Britton's request to stay execution of the judgment pending appeal. Id.

After five years of litigation, including dismissal of some claims on the motion to dismiss and other claims on a motion for summary judgment, and the Brittons' voluntary dismissal of their remaining claims on the eve of trial, the court entered an Amended Judgment [dkt. 1:18-cv-11288, Doc. No. 221] on September 25, 2023. The Brittons' appeal of that Amended Judgment and various orders remains pending.

### C.  The Instant Complaint

Meanwhile, on June 30, 2023, the Brittons filed (but did not serve) their complaint in this action in Massachusetts Superior Court for Middlesex County against Defendants PHH, Newrez, and their counsel, Korde & Associates, P.C. ("Korde"). Compl. [Doc. No. 1-1]. The Brittons allege that payments totaling $254,241.77 made by one or more Defendants to Drummer Boy were improper and wrongly added to the balance of the Brittons' mortgage. Id. ¶ 22. They contend that these collections were both contrary to federal law and improper where execution of the Amended Judgment was automatically stayed pending appeal. Id. ¶¶ 55, 13.

The Brittons' Complaint asserts three causes of action: money had and received (Count 1); violations of M.G.L. c. 93A (Count 2); and breach of contract, promissory estoppel, and detrimental reliance (Count 3).

All Defendants were served on September 22, 2023. See State Court Record 5-6 [Doc. No. 7].

A.   Removal and the Pending Motions

PHH and Newrez timely filed a Notice of Removal [Doc. No. 1] on October 12, 2023, asserting diversity[1] and federal question jurisdiction. PHH and Newrez included with their filing a copy of the Complaint [Doc. No. 1-1] but not its Exhibits.

Four days later, PHH filed the 303-page State Court Record [Doc. No. 7], including the State Court Docket Report and the Exhibits to the Complaint.

On October 19 and 30, 2023, Newrez and Korde filed Motions to Dismiss [Docs. No. 12, 14]. Plaintiffs requested an extension of time to respond to these motions until after an anticipated Motion to Remand was filed and decided. Mot. for Extension [Doc. No. 15]. The court denied the requested relief but gave Plaintiffs a fourteen-day extension as a courtesy. Elec. Order [Doc. No. 16].

On November 13, 2023, the Brittons filed the pending Motion to Remand [Doc. No. 17].[2] After PHH also filed a Motion to Dismiss [Doc. No. 20], the court granted Plaintiffs' request for leave to file a single response to the three Motions to Dismiss and a further extension of time.

---

[1] As discussed further below, Defendant Korde is a Massachusetts corporation but PHH and Newrez contend that Korde was fraudulently joined and should be disregarded for diversity of citizenship purposes. Not. of Removal ¶¶ 10-11 [Doc. No. 1].

[2] The Motion states that Plaintiffs also intend to file a Second Motion to Remand, which would "focus exclusively on why this Court lacks subject matter jurisdiction," including the question of whether Korde was fraudulently joined. Mot. to Remand 5 [Doc. No. 17]. No such motion was filed.

Elec. Order [Doc. No. 22]. The court thereafter granted Plaintiffs a third extension to December 8, 2023, to file their response to the motions to dismiss. Elec. Order [Doc. No. 25]. The court warned that it did not anticipate granting further extensions. Plaintiffs nonetheless requested a fourth extension of time to file a response to the motions to dismiss, Pls. Motion [Doc. No. 29], which the court denied. Elec. Order [Doc. No. 31]. Although Plaintiffs were not permitted a fourth extension of time, the court is treating the motions to dismiss as opposed.

After Plaintiffs filed their Motion to Remand [Doc. No. 17], PHH and Newrez filed a Supplement Regarding Removal Notice [Doc. No. 27] with two attachments, namely the complete documents served on each of them, including the Summons and Exhibits to the Complaint. The Brittons then moved to strike that filing as "untimely and unauthorized." Motion to Strike 1 [Doc. No. 33].

In their final filing, a Reply to the Response to their Motion to Remand [Doc. No. 39], Plaintiffs dispute the charge of fraudulent joinder, and assert that the court does not have subject matter jurisdiction. Plaintiffs contend that because Korde and Plaintiffs are both citizens of Massachusetts, there is no diversity of citizenship, and because Plaintiffs have asserted only state law claims, there is no federal question jurisdiction.

## II.    **Subject Matter Jurisdiction**

Though Plaintiffs did not file their anticipated second motion to remand addressing subject matter jurisdiction, they raised the issue in their reply to the motion to remand. Moreover, "[f]ederal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013). "Federal courts are courts of limited jurisdiction," so "federal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting

jurisdiction has the "burden of demonstrating the existence of federal jurisdiction." Id.
Accordingly, the court considers whether it has subject matter jurisdiction over Plaintiffs' claims
and concludes it does.

### A. Federal Question

Defendants PHH and Newrez assert that the court has federal question jurisdiction over
Plaintiffs' Complaint pursuant to 28 U.S.C. § 1331. However, though the Complaint cites federal
laws as setting limitations on Defendants' actions, all asserted causes of action are state law
claims. Plaintiffs' references to federal law are insufficient to confer federal question jurisdiction
where no federal cause of action is asserted.

### B. Diversity Jurisdiction

Defendants PHH and Newrez also assert that this court has diversity jurisdiction.
Diversity jurisdiction requires that the case arise between "citizens of different states" or
"citizens of a State and citizens or subjects of a foreign state" and have an amount in controversy
that exceeds $75,000. 28 U.S.C. § 1332(a). Here, PHH Mortgage Corp. is a citizen of New
Jersey; PHH Mortgage Services Corp. is a citizen of Maryland and New Jersey; Newrez LLC is
a citizen of Delaware and New York; and New Residential Mortgage LLC is a citizen of
Delaware and New York. Notice of Removal ¶ 9 [Doc. No. 1]. Both Plaintiffs and Defendant
Korde are citizens of Massachusetts, so the citizenship requirements are met only if Korde is
determined to have been fraudulently joined.

The doctrine of fraudulent joinder provides that removal is not defeated by the joinder of
a non-diverse defendant "where there is no reasonable possibility that the state's highest court
would find that the complaint states a cause of action upon which relief may be granted against

the non-diverse defendant." Universal Truck & Equip. Co., Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014).

Plaintiffs contend that Korde is mentioned more than any other Defendant in the Complaint. Pl.'s Reply 2 [Doc. No. 39]. But no cause of action in the Complaint asserts a claim against Korde. Count 1 makes no mention of Korde at all. Count 2 discusses Korde in its factual recitation, but the allegations in that count which set forth the violation of the elements of M.G.L. c. 93A mention only PHH and Drummer Boy. Count 3 alleges as to Korde only that "promises made by [Korde] . . . constitute promises for the purposes of [Plaintiffs'] claims under Promissory Estoppel/Detrimental reliance." Complaint ¶ 136 [Doc. No. 1-1. This conclusory statement alone is insufficient to state a claim for promissory estoppel or detrimental reliance against Korde.

Moreover, all allegations against Korde asserted in the Complaint are duplicative of the Brittons' allegations against Korde in their 2018 suit. Although the Brittons dismissed those claims without prejudice, the prior Complaint demonstrates that the Brittons knew of these allegations in 2018. The four year statute of limitations on the Brittons' Chapter 93A claim against Korde had therefore run before this suit was filed June 2023. The court thus finds no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against Korde.

Accordingly, Korde has been fraudulently joined in this action. Disregarding Korde's citizenship in determining jurisdiction, there is complete diversity between the parties and the court has diversity jurisdiction over this action.

### III.   <u>Plaintiffs' Motion to Remand and Motion to Strike</u>

The Brittons contend that the <u>Notice of Removal</u> [Doc. No. 1] was based on "fatal removal defects" and "missing pages." Motion to Remand 1 [Doc. No. 17]. Specifically, they claim that remand is warranted because PHH and Newrez failed to attach certain documents to the removal notice, namely the 185 pages of exhibits attached to the Complaint, a copy of the summons with the Sheriff's real-time notations, and a copy of the state court tracking order, and because PHH and Newrez purportedly "told two lies" in their removal papers, namely that they had filed a copy of the Complaint (despite not including the Complaint's exhibits) and that the Complaint was devoid of claims against Defendant Korde. <u>Id.</u> at 2-3 (citing State Court Record [Doc. No. 7] and Complaint [Doc. No. 1-1]).

First, the court rejects as frivolous Plaintiffs' suggestion that PHH and Newrez should be sanctioned for a "lie" for stating that they included the Complaint while omitting the exhibits. The record fully demonstrates that there was no deception intended where PHH promptly following removal (and prior to Plaintiffs' filing of the Motion to Remand) filed the certified state court record containing the missing exhibits. <u>See</u> State Court Record [Doc. No. 7]. Similarly, the court finds no "lie" or sanctionable conduct in PHH and Newrez's assertion that the <u>Complaint</u> [Doc. No. 1-1] contains no "claims" against Korde. As discussed above, the Complaint asserts no counts against Korde. The sprinkling of factual allegations in the Complaint does not make PHH and Newrez's assertion that there are no claims false.

As to the procedural defect, the Brittons are correct that PHH and Newrez did not include with their <u>Notice of Removal</u> [Doc. No. 1] all required documents. Pursuant to 28 U.S.C. § 1446(a), a defendant seeking to remove a civil action shall file a notice of removal "together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such

action." But the court rejects Plaintiffs' argument that the failure to include these papers with a notice of removal is a fatal defect requiring remand. See Kauders v. Uber Techs., Inc., 2017 WL 903455, at *3 (D. Mass. Mar. 7, 2017) ("Defendants' failure to attach the summons . . . was a minor technical defect that does not affect the basis for federal jurisdiction.") (quotations omitted). Furthermore, "courts generally allow a defendant to amend a notice of removal beyond the 30-day period 'for technical defects in the jurisdictional allegations, but not to add a new basis for federal jurisdiction.'" Vilaythong v. Sterling Software, Inc., 353 F. Supp. 3d 87, 92 (D. Mass. 2018) (quoting Kauders, 2017 WL 903455, at *3).

Consistent with "the majority view [] that a removing party's failure to attach[] the required state court papers to a notice of removal is a mere procedural defect that is curable," Countryman v. Farmers Inc. Exchange, 639 F.3d 1270, 1272 (10th Cir. 2011) (collecting cases), this court finds that the defects in Defendants' Notice of Removal [Doc. No. 1] were minor technical errors that were cured with the filing of the State Court Record [Doc. No. 7], with no impact on this court's jurisdiction over the Brittons' claims. Nor is the court persuaded by the Brittons' argument that they or the court have somehow been prejudiced by the omissions.

Likewise, the court finds no reason to strike Defendants' Supplement Regarding Removal Notice [Doc. No. 27]. As noted, courts allow parties to cure technical defects in a removal notice beyond the 30-day period provided by § 1446 where, as here, they do not seek to add new bases for federal jurisdiction. See Vilaythong, 353 F. Supp. 3d at 92.

Accordingly, Plaintiffs' Motion to Remand [Doc. No. 17] and Motion to Strike [Doc. No. 33] are DENIED.

## IV.    Defendants' Motions to Dismiss

PHH, Newrez, and Korde have each moved to dismiss the complaint, seeking dismissal on overlapping, but not entirely coextensive, grounds. Motions to Dismiss [Doc. Nos. 12, 14, 20].

A.  Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "an adequate complaint must include not only a plausible claim but also a plausible defendant." See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

In general, a complaint filed pro se is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). That does not mean that pro se plaintiffs need not plead facts sufficient to state a claim, but it does afford them some leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980).

### B. Korde's Motion to Dismiss

Korde contends that the Brittons have not identified any facts that would plausibly entitle them to relief against Korde, and that, even if the Brittons had articulated claims against Korde, those claims are barred either by the relevant statutes of limitations or issue preclusion. Korde & Associates, P.C.'s Motion to Dismiss [and Incorporated Mem. of Law] ("Korde Mem.") [Doc. No. 14]. As discussed above, see supra part II.B., Plaintiffs have failed to articulate any viable claims against Korde and any such claims would be time-barred. And as discussed below, the claims against Defendants are also barred by issue preclusion.

### C. Newrez and PHH's Motions to Dismiss

Newrez argues that the Brittons have failed to articulate any basis for liability against Newrez because the only action by Newrez the Complaint identifies is a June 2019 letter to the Brittons, which is not sufficient to find Newrez potentially liable for any of the Brittons' claims. Newrez and New Residential Mortgage's Mem. Supporting their Mot. to Dismiss ("Newrez Mem.") 4 [Doc. No. 13]. Newrez further argues that the Brittons' claims should be dismissed because they are either barred by collateral estoppel or fail to state a claim on which relief can be granted. Id. at 5-10.

PHH contends that: Count 1 (money had and received) of the Complaint is only asserted against Drummer Boy, which is not a party to this action, is partly barred by the statute of limitations, and fails to state a claim; Count 2 (c. 93A) is largely time-barred and, to the extent it is not, fails to state a viable claim for relief or is barred by issue preclusion; and Count 3 (breach of contract, promissory estoppel, and detrimental reliance) fails because the Brittons have shown no breach of contract by PHH and is barred by the statute of limitations. PHH Mortgage

Corporation and PHH Mortgage Services Corporation's Mem. of Law in Support of Mot. to

Dismiss the Complaint ("PHH Mem.") [Doc. No. 21].

      The court considers each count of the Complaint as to Newrez and PHH in turn.

#### 1. Money Had and Received (Count I)

      The claim of money had and received "is simply a narrower form of an unjust

enrichment, limited to wrongs arising from money changing hands." Reed v. Zipcar, Inc., 527

Fed.App'x 20, 24 (1st Cir. 2013) (citing Jelmoli Holding, Inc. v. Raymond James Fin. Servs.,

Inc., 470 F.3d 14, 17 n.2 (1st Cir. 2006)). The difference between money had and received and

unjust enrichment is that unjust enrichment "is not limited to enrichment by money, or its

equivalent." Jelmoli Holding, 470 F.3d at 17 n.2. Under Massachusetts law, to state a claim for

money had and received a plaintiff must allege sufficient facts to show defendant "recover[ed]

money which should not in justice be retained by the defendant, and which in equity and good

conscience should be paid to the plaintiff." Vieira v. First American Title Ins. Co., 668 F. Supp.

2d 282, 295 (D. Mass. 2009). Claims for money had and received are normally subject to

Massachusetts' six-year statute of limitations for contract actions, and the six-year period is

calculated to run from the date of 'receipt of payment without regard to when the mistake is

discovered.' Brine v. Paine, Webber, Jackson & Curtis, Inc., 745 F.2d 100, 102 (1st Cir. 1984)

(quoting New Bedford v. Lloyd Investment Assoc., Inc., 363 Mass. 112, 118 (Mass. 1973).

      The Brittons allege that "[i]n the last six years, **Defendant in Counterclaim Drummer**

**Boy Homes Association, Inc.** has wrongfully collected $252,405.85 from [their] first

mortgagees" during what they allege was an automatic stay[3] while the state court proceedings

were on appeal. Complaint ¶ 103 [Doc. No. 1-1] (emphasis added). They contend that the

---

[3] As discussed above, the Brittons' automatic stay argument has previously been considered and
rejected by this court. See Mem. & Order [dkt. 1:18-cv-11288, [Doc. No. 70].

payments were made by the Brittons' first mortgagee to Drummer Boy over the Brittons' objections and without their consent, and thus the addition of those payments to the Brittons' mortgage balance is unjust and should be disgorged back to them, with 12% interest. Id. ¶ 105. In total, the Brittons seek roughly $410,000 be returned to them for money had and received. Id. ¶ 106.

Count 1 of the Complaint does not state a viable claim for relief against either PHH or Newrez. The Complaint does not allege that Defendants are in possession of money that is rightfully the Brittons' and should be returned to them. Instead, the Complaint alleges that money was wrongfully collected by Drummer Boy from Defendants. Id. ¶¶ 103-105. While the impact of that allegedly wrongful collection was an increase in the Brittons' mortgage balance, id. ¶ 106, Plaintiffs point to no wrongdoing by, or enrichment of, the Defendants.

Notably, "Defendant in Counterclaim Drummer Boy Homes Association," and Drummer Boy is the only entity identified by name in Count 1. Id. ¶ 103. Drummer Boy is not a Defendant in this suit.

Accordingly, Count 1 of the Complaint [Doc. No. 1-1] is dismissed in its entirety for failure to state a claim on which relief can be granted.

### 2. *M.G.L c. 93 (Count 2)*

To state a claim under the consumer protection statute, M.G.L. c. 93A, a plaintiff must allege facts sufficient to establish four elements:

> first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury.

Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161, 92 N.E.3d 1205 (2018). The statute of limitations for a claim brought under c. 93A is four years. See Latson v. Plaza Home Mortg.,

Inc., 708 F.3d 324, 326 (1st Cir. 2013) ("The limitations period for chapter 93A actions is four years from injury").

                a.     Allegations against Newrez

Count 2 fails as to Newrez. First, to plead an actionable Chapter 93A claim arising out of a breach of contract—which the Brittons concede they are doing here, see Complaint ¶¶ 2, 111 [Doc. No. 1-1]—a plaintiff must allege that the contract was breached in bad faith. See Skyview Fin. Co., LLC v. Kearsarge Trading, LLC, , 616 F. Supp. 3d 152, 158 (D. Mass. 2022). The Brittons allege vaguely that Defendants had "an ulterior motive coupled with a coercive and extortionate objective," but allege no specific facts as to Newrez's participation in that scheme. In fact, Newrez is not named in Count 2 of the Complaint at all. A complaint alleging Chapter 93A liability "must demonstrate unfairness to the degree of factual detail required by Iqbal and Twombly." Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 263 (D. Mass. 2011). It is not enough to make conclusory allegations of bad conduct. The court finds the Complaint factually insufficient to support a Chapter 93A claim against Newrez.

Additionally, Chapter 93A, § 9 requires "a demand letter listing the specific deceptive practices claimed" be sent to the named defendant as a prerequisite to suit. The only demand letter the Brittons sent was an April 24, 2022 letter to "Selene Finance LP." State Court Record 202-212 [Doc. No. 7]. The letter is addressed only to Selene Finance. Id. Even if the claim against Newrez were timely, it would fail for lack of demand letter alerting them to the alleged Chapter 93 violations, as required by the statute. Accordingly, to the extent it raises claims against Defendant Newrez, Count 2 is dismissed.

                b.  Allegations against PHH

Count 2 of the Complaint alleges that PHH engaged in illegal lending practices by paying $254,241.77 to Drummer Boy under Section 9 of the Mortgage "even though PHH's senior lien status was never in jeopardy." Complaint ¶ 110 [Doc. No. 1-1]. The Brittons contend that by paying the Brittons' outstanding common expenses to Drummer Boy, PHH "engaged in illegal lending practices." Id. It also alleges that the decision by PHH to pay the fees was motivated by a coercive and extortionate objective. Id. ¶ 111. Specifically, as to PHH, Count 2 alleges that PHH "paid when it did not have to pay, paid when it should have not paid, and paid over [the Brittons'] express objections." Id. ¶ 111. Plaintiffs assert that in doing so, PHH (and Drummer Boy) engaged in unfair and deceptive[] lender, servicer, and debt collection practices in violation of RESPA (the Real Estate Settlement Procedures Act), the FDCPA (Fair Debt Collection Practices Act), and other laws, and that these violations are all actionable under M.G.L. ch. 93A. Id. ¶¶ 115-131.

Fundamentally, the Brittons take issue with (1) PHH's ability to assume responsibility for the Brittons' unpaid common expenses to preserve PHH's status as priority lienholder, and (2) PHH's determination that its priority lien status was in jeopardy. But PHH was entitled to pay the fees owed by the Brittons to Drummer Boy, both by the Mortgage contract and by Massachusetts law. This court has already considered and rejected the Brittons' argument that it was illegal for Drummer Boy to allow the Brittons' mortgage servicer to elect to pay their outstanding fees in order to keep their priority lien on the Brittons' unit. Britton v. Marcus, Errico, Emmer & Brooks, 2020 WL 7024545, at *4-5 (D. Mass. Nov. 30, 2020). It has also considered and rejected the argument that the Federal Foreclosure Bar prevents a condominium association's liens from taking priority over the first mortgagee. Id., at *5. This court found that, where M.G.L. c. 183A, § 6 gives mortgage servicers the choice of whether to assume

responsibility for the unpaid condominium fees, there is no conflict with the Federal Foreclosure Bar. Id.

Collateral estoppel "precludes a plaintiff from relitigating identical issues by merely switching adversaries." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 328 (1979) (internal quotation omitted). For nonmutual collateral estoppel, where only one party was part of an earlier proceeding, "the party against whom the doctrine is asserted must have had a 'full and fair opportunity for judicial resolution of the same issue.'" Universal Trading & Inv. Co., Inc., v. Bur. for Representing Ukrainian Interests in Int'l and Foreign Courts, 605 F. Supp. 3d 273, 289 (D. Mass. 2022) (quoting Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 770-71 (1st Cir. 2022)). The court finds that the Brittons have had full and fair opportunity for judicial resolution on their claim that PHH's decision to assume responsibility for their outstanding expenses owed to Drummer Boy was illegal. See In re Sonus Networks, Inc. v. Shareholder Derivative Litigation, 499 F.3d 47, 56 (1st Cir. 2007) (issue preclusion "bars relitigation of those issues even in the context of a suit based on an entirely different claim").

Without the allegation that PHH acted without legal authority in paying off the Brittons' arrears to Drummer Boy, what is left of Count 2 is not actionable under Chapter 93A. First, the Brittons allege that PHH "has engaged in unfair and deceptive, lender, servicer, and debt collection practices" in violation of the FDCPA, 15 U.S.C. § 1692 et seq., and RESPA, 12 U.S.C. §§ 2601 et seq. Complaint ¶¶ 116-17 [Doc. No. 1-1]. To the extent the Brittons make allegations under the FDCPA, those claims are time-barred. A violation of the FDCPA must be brought within one-year of the date on which the alleged violation occurs. See Rotkiske v. Klemm, 598 U.S. 8, 13 (2019). The last payment made by PHH to Drummer Boy was on July 31, 2020. Complaint ¶ 106 [Doc. No. 1-1]. The Brittons' FDCPA claims are untimely. As for the

RESPA claims, the Complaint does not specify what provision of RESPA has been violated or what specific conduct of Defendants gives rise to the RESPA claim.

Accordingly, because Plaintiffs' allegations are either barred or have not alleged facts sufficient to establish a violation of Chapter 93A, Count II of Plaintiffs' Complaint is dismissed in its entirety.

### 3. Breach of Contract, Promissory Estoppel, and Detrimental Reliance (Count 3)

The Brittons' final cause of action is for breach of contract, promissory estoppel, and detrimental reliance (Count 3). Like its predecessors, Count 3 fails to state a viable claim for relief.

Count 3 alleges that PHH, by paying the common expenses owed by the Brittons to Drummer Boy, breached paragraphs 4 and 9 of the Mortgage contract[4] because "none of the condition precedents to a PHH recoverable payment contained in section 4 and section 9 of the mortgage contract were satisfied." Complaint ¶¶ 133, 138 [Doc. No. 1-1]. Count 3 repeats the Brittons' arguments regarding the Federal Foreclosure Bar and the automatic stay against lien enforcement, see supra note 3. The Brittons' only new argument is that they "have a perpetual subordination agreement embedded in the [contract] that operates to protect PHH's senior lien status." Id. ¶ 139. The question presented is whether it was a breach of the Mortgage contract for PHH to assume responsibility for the common expenses the Brittons owed Drummer Boy in order to maintain the mortgage's priority lien status, even over the Brittons' express objection. It was not.

The Brittons' breach of contract arguments largely rely on their contention that the Federal Foreclosure Bar and automatic stay prevented Drummer Boy from legally collecting the

---

[4] The parties do not dispute that the Mortgage contract is valid and enforceable.

overdue common expenses and PHH from choosing to assume responsibility for the fees to maintain its first priority lien status. For example, they contend that "[n]one of the condition precedents to a PHH recoverable payment contained in section 4 and section 9 of the mortgage contract were satisfied." Id. ¶ 138. Additionally, they argue that "[i]n order for PHH to step in and pay MEEB or [Drummer Boy], PHH must show that the Brittons had first breached their contractual obligations under section 4," id. ¶ 142, and that "Section 9 bars PHH from making a recoverable payment against the Brittons, unless the conditions in section 9 are satisfied, which is a legal and factual impossibility." Id. ¶ 145.

The Mortgage provides, in part:

**4.     Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any

. . .

**9**.     **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . .. Any amounts disbursed by Lender under this Section 9 shall become additional debt of the Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate . . .

State Court Record 75, 77-78 [Doc. No. 7].

The underlying legal issues regarding the Federal Foreclosure Bar and automatic stay have already been (repeatedly) resolved against the Brittons: Drummer Boy was entitled to

collect on the overdue fees and PHH was empowered by state statute to assume responsibility for those fees. See supra part I.B. Given the legality of the collection by Drummer Boy, the Brittons were not compliant with Paragraph 4 of the Mortgage as to their common expenses. Moreover, M.G.L. c. 183A, § 6's provision that a priority lienholder, such as a first mortgagee, may maintain its priority status by assuming responsibility for unpaid common expenses, see Drummer Boy Homes Ass'n, 474 Mass. at 27, is consistent with Paragraph 9 of the Mortgage, which allows a Lender to protect its interest in the property by "paying any sums secured by a lien which has priority over" the Mortgage. Thus, PHH acted in accordance with the Mortgage and the Brittons' breach of contract claim fails.

The Brittons' promissory estoppel and detrimental reliance claims are similarly deficient. The Brittons allege that they were promised, via a February 22, 2017 email, that PHH would not pay Drummer Boy for the overdue common area expenses, and they relied on that promise. Complaint ¶ 136 [Doc. No. 1-1]; see also State Court Record 154 (Korde Email) [Doc. No. 7]. In fact, the email stated that PHH "will not pay unless its senior lien status is in jeopardy." Supplement Regarding Removal Notice 157 [Doc. No. 27]. As a matter of law, PHH's senior lien status was in jeopardy. See Drummer Boy Homes Ass'n, 474 Mass. at 18. The Brittons also allege that PHH, and, by extension, Newrez, did not keep its promises because it paid out money—the common expenses fees—that it should not and was not required to pay, over the Brittons' express objections. Again, PHH's decision to assume responsibility for those expenses and pay Drummer Boy was entirely licit and not a breach of any promises, contractual or otherwise.

Consequently, the Brittons' promissory estoppel and detrimental reliance claims fail. Accordingly, Count 3 of the Complaint is dismissed as to all Defendants.

## V.        Conclusion

For the foregoing reasons, the <u>Motion to Remand</u> [Doc. No. 17] and <u>Motion to Strike</u> [Doc. No. 33] are DENIED, and Defendants' <u>Motions to Dismiss</u> [Doc. Nos. 12, 14, 20] are GRANTED.

IT IS SO ORDERED.

September 12, 2024                                          <u>/s/Indira Talwani</u>
                                                                   United States District Judge